(160 App. Div. 851)

## HALL v. O'BRIEN.

(Supreme Court, Appellate Division, Third Department. March 4, 1914.)

1. PAYMENT (§ 65*)—PRESUMPTION.

The law assumes that an evidence of debt given by one person to another will be found in the possession of the creditor, and when it is in the possession of the debtor, there is a strong presumption that the debt has been canceled by payment or gift.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 162–175, 196, 197, 199–201; Dec. Dig. § 65.*]

2. MORTGAGES (§ 319*)—FORECLOSURE—ACTIONS.

In an action to foreclose a mortgage which was in the possession of the defendant, evidence *held* insufficient to rebut the presumption that the mortgage had been canceled and to show that the mortgagor had, by way of gift, released defendant from the obligation.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 855–863, 875, 913, 1356, 1366; Dec. Dig. § 319.*]

Smith, P. J., and Lyon, J., dissenting.

Appeal from Trial Term, Clinton County.

Action by Ida M. Hall against John T. O'Brien. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Patrick J. Tierney, of Plattsburgh, for appellant.

John B. Riley, of Plattsburgh (Ernest C. Gorden, of Plattsburgh, of counsel), for respondent.

HOWARD, J. The parties to this litigation became acquainted in 1890. At that time the husband of the plaintiff was assistant manager of the Chateaugay Ore & Iron Company; the defendant was employed as a station agent by that company. After a time the plaintiff's husband was called away from Clinton county permanently to San Domingo, where he became employed. He seems to have made money rapidly in a modest way. He sent it home to his wife, and she managed his financial affairs and invested his money skillfully. The defendant assisted the plaintiff with this work, drawing mortgages, assignments, satisfaction pieces, figuring interest, and other such work. They became, in course of time, very friendly. The plaintiff supplied the defendant with many passes on the railroad and passes to the theater. They went to the theater together a great deal. They went together, on passes furnished by the plaintiff, to the Pan-American Exposition at Buffalo; the plaintiff paying the expenses of the trip.

She visited much at his house, frequently in the evening. She visited the defendant at night, frequently at the railroad office where he was employed, and stayed late. After the defendant was discharged from the employ of the railroad company and became engaged elsewhere, the plaintiff visited him at his new place of business, and was with him much there, at his home and on the streets. In 1902 the defendant purchased a house to be occupied by himself as a home. He gave $3,500 for the property. Mrs. Hall, the plaintiff, loaned him the entire amount of the purchase price, and took a bond and mortgage on the house for its full value. For some years after this transaction the parties continued their friendly relations. About five or six years ago there came a rupture, not abrupt, perhaps, but the parties ceased to be friendly. On February 18, 1913, the day before the defendant was to be married, the plaintiff began this suit to foreclose the mortgage which she had taken on the defendant's home.

No interest has ever been paid on this mortgage, and by the terms of the instrument the whole amount is due. The only defense to the action is the allegation of a gift of the bond and mortgage, and a remission of the debt which they represent by the plaintiff to the defendant. The plaintiff disputes this allegation; she denies that she ever made the defendant a present of these securities, or ever absolved him from the debt. Was there a gift? This is the only question to be determined by us. There was no witness to the alleged gift, and hence we find the version of one litigant pitted absolutely against the version of the other. It becomes necessary, therefore, to consider more closely than usual the circumstances of the case and the probabilities arising therefrom; also such presumptions as the law says arise in such cases.

[1, 2] It is well to note, first, that the law assumes that an evidence of debt given by one person to another will be found, not in the possession of the debtor, but in the hands of the creditor. Therefore, when the reverse is the case, that is, when the evidence of debt is found in the possession of the debtor, a strong presumption arises that the debt has been canceled either by payment or gift. Bergen v. Urbahn, 83 N. Y. 49. In the case before us Mrs. Hall, the creditor, failed to produce the bond and mortgage. She could not produce them, for they were in the possession of O'Brien, the debtor, where they had reposed for more than a decade—reposed in quiet, unmolested, paying no interest. From these circumstances a presumption arises that the debt is no longer alive, no longer due and owing to the plaintiff. She must explain away these circumstances, or the presumption remains and becomes conclusive against her. She has attempted to make such explanation, but is it sufficient? She says that her clerk, whom she had befriended, took advantage of her, and after she had intrusted him with the possession of the documents, he refused to give them back to her, but upon one excuse or another retained them. This is her only explanation. For some five years after the execution of the papers she and O'Brien remained friendly; for some five years they were estranged. In the varying moods of these ten years she has never demanded payment but once; she never, until the eve of the defendant's

wedding, began suit at all. Does her explanation convince the unbiased mind?

The defendant comes into court with the bond and mortgage in his hands. He gives his explanation of this circumstance. He says that he and the plaintiff became intimately friendly, so much so that she, being wealthy, and he having had some misfortunes on her account, she undertook to square herself for the trouble she had caused him and to relieve his embarrassments and worries by making him a present of the bond and mortgage. The defendant's attitude here is said to be unchivalrous; but we are not to be guided here by the code of chivalry, it is the truth we are after.

That the attitude of these parties towards each other was more than a business relation is entirely apparent. They were intimately friendly. It is not necessary to determine, nor even to intimate, that this friendship was improper; but in order to analyze the situation presented here, the relationship of the parties is a dominant consideration, and it becomes necessary to refer to it. What was the plaintiff's frame of mind? Would she be likely to make the alleged gift? She wrote letters to the defendant. Let us look at them. The letters which she wrote while she was away in New York were not business letters. While they contain nothing improper, they disclose plainly the keen, constant interest which Mrs. Hall had in Mr. O'Brien. She writes to him of personal matters, of her teeth, and how well they look, of her going to the theater, of the weather; she addresses him as "My dear John"; she tells how glad she is to hear from him. It would be idle to attempt to force upon the court the conclusion that these communications were the mere letters of a wealthy business woman to an employé. Every circumstance about these missives stamp them with a different character.

The whole history of the event negatives the idea of a business transaction. The bond and mortgage are delivered to the mortgagor; no interest is ever paid, but it is allowed to accumulate until the original debt of $3,500 becomes $5,757.50; the foreclosure suit was instituted on the evening before the defendant's wedding day. The whole amount of the purchase price was advanced by the plaintiff; this is significant; it bespeaks friendship rather than business. The plaintiff was not an ordinary housewife, ignorant of bonds, mortgages, securities, and affairs; she was a business woman; she has been called a shrewd business woman; evidently that was so. She could not have been imposed upon by her hireling in this particular; she knew what she was doing. She must have known that to suffer the defendant to retain these securities for so long a time jeopardized their validity.

In weighing the evidence in this case and in considering the probabilities, the court is forced to take cognizance of human nature. A careful survey of the evidence adduced and of the peculiar circumstances disclosed leads us to the conclusion that the version of the transaction given by the defendant is well corroborated by circumstances and that the plaintiff's version is wholly uncorroborated, and that the plaintiff intended to, and did in fact, give the defendant the bond and mortgage in question and absolve him from the debt which he owed her.

The judgment should be reversed on the law and the facts, and judgment rendered for the defendant with costs.

We disapprove of the sixth, seventh, and eighth findings of fact made by the trial court, and we find that nothing is due and owing to the plaintiff from the defendant on the bond and mortgage; that the plaintiff did give to the defendant the bond and mortgage and the indebtedness represented thereby; also that plaintiff was not at the time of the commencement of this action the owner and holder of the bond and mortgage. All concur except SMITH, P. J., and LYON, J., dissenting.