JULIETTE RIBORDY DELANEY and AUGUSTA RIBORDY, complainants,

*v.*

CHARLOTTE RIBORDY, FRED STOCKER and JOHN RIECK, defendants.

[Decided July 16th, 1937.]

*Mr. Joseph V. Riggio,* for the complainants.

*Mr. Jerome Alper,* for the defendants.

EGAN, V. C.

On September 28th, 1926, Maurice Ribordy and Charlotte, his wife, obtained a loan of $2,100 from Caesar Ribordy, a brother of Maurice, for which they gave as security, a bond and mortgage covering the premises No. 35 Brandt street, Little Ferry, New Jersey. The mortgagors held title to the premises by the entirety.

Maurice died July 4th, 1931. Caesar, who was a batchelor, died intestate June 22d, 1935, in Switzerland. On June 7th, 1936, Charlotte, the widow of Maurice, married Fred Stocker, the defendant. On August 12th, 1936, the administrator of the estate of Caesar, assigned in writing to these complainants, who are children of the said Maurice and Charlotte, the said bond and mortgage covering their parents' property, as their distributive share of the estate of their uncle, Caesar Ribordy, aforesaid. The complainants seek to foreclose the mortgage. They allege that there is a balance of $1,800 principal and interest due on the mortgage.

The defendants filed an answer and counter-claim. The answer, in effect, alleges that the mortgage has been fully paid. By their counter-claim they seek a decree of cancellation of the mortgage. The bond and mortgage has been in the possession of the mortgagors since before the death of Maurice. The defendant Charlotte claims that they were delivered to her and her late husband, Maurice, on, or about April 20th, 1931, and from that time they were kept in a tin box in their residence, where they remained until they were produced in court at the hearing herein.

The complainants called a witness, Charles Schultz, a real estate broker, and secretary of a building and loan association, who testified that, on April 13th, 1931, Maurice Ribordy made application to his building and loan association for a loan of $2,000 on bond and mortgage on the property; that a search of the title was made by which it was disclosed that a first mortgage of $300 and a second mortgage of $2,100 was open of record against the title; that he discussed those liens with Maurice who told him the first mortgage had been paid, and that there was a balance then due on the second mortgage. The amount of the balance was not mentioned. The loan applied for was not advanced by the building and loan association.

Both complainants testified that they had seen the bond and mortgage in the tin box in the home of their parents several years before the death of their father, Maurice; that their father was requested by his brother, Caesar, to hold it for him, as a precaution against loss; that shortly after his death, or about August or September, 1931, their uncle Caesar, the mortgagee, called at their home and conversed with their mother, Charlotte, about the payment of the balance due on the mortgage; that in the course of that conversation, Charlotte declared she was unable to pay the amount due, and that Caesar told her that she had received moneys from policies of insurance on her said husband's life, and from other sources, and for that reason he insisted that she should pay the moneys which he claimed to be due on the bond and mortgage.

There does not appear to be any denial that there was money due on the mortgage on April 13th, 1931, when the application was made to the building and loan association for a loan of $2,000. There is evidence, on the part of Charlotte, and her son, Henry Ribordy, who is also the son of Maurice Ribordy, deceased, that on April 20th, 1931, Maurice, Charlotte and Henry called at the home of Caesar and paid him the sum of $200 which they declared was the balance due on the mortgage; that Caesar then and there delivered the bond and mortgage to Maurice and Charlotte. This evidence stands uncontradicted.

The bond shows payments endorsed thereon aggregating the sum of $300; they appear in the handwriting of Maurice followed by the signature of Caesar. The complainants admit the knowledge of the existence of two checks, *Exhibits D-5* and *D-6* which total $850, which had been paid to their uncle Caesar. Charlotte testified that *Exhibit D-5,* a check for $604.75 dated September 13th, 1930, was mailed by her husband, Maurice, to his brother, Caesar, in New York City, on account of the mortgage. She further stated that Caesar informed her that he had received that check and cashed the same at the Little Ferry National Bank. She testified as to the sources from which the money came, through which the payments were made on account of the mortgage. She said that payments by check were made from the proceeds of $822 received as the cash surrender value of a life insurance policy, paid by the New York Life Insurance Company, which sum had been deposited in the bank in March, 1931. She also related that her husband, Maurice, received the sum of $800 from the sale of his restaurant in Hackensack, and the same was deposited in the bank on August 25th, 1930. She stated that the payments on the mortgage were made from those receipts. She denied that Caesar Ribordy had called at her home in August or September, 1931, as testified to by the complainants. Henry Ribordy corroborated the essential features of the testimony given by his mother, Charlotte.

The facts in this case, in my opinion, seem to support the claims of the defendants. Possession of a bond and mortgage

carries with it the suggestion of payment. *48 C. J. 687 § 190; 48 C. J. 587, 588 footnote 23.* "The law assumes that the evidence of debt given by one person to another will be found not in the possession of the debtor but in the hands of the creditor. Therefore, when the reverse is the case, that is, when the evidence of debt is found in the possession of the debtor, a strong presumption arises that the debt has been canceled either by payment or gift." This quotation is taken from *Hall* v. *O'Brien, 160 App. Div. 851, 853; 148 N. Y. S. 551,* affirming *218 N. Y. 50; 112 N. E. Rep. 569. Harrison's Administratrix* v. *Johnson, 18 N. J. Eq. 420,* sustains the principle appearing in the last quotation. While the opinion was reversed on appeal, because the bond did not accompany the mortgage, the chief-justice, in rendering the decision of the court said *(19 N. J. Eq. 500)* : "When, therefore, the bond does not accompany the mortgage, the presumption of payment does not arise, but the reverse." In the instant case, both the bond and mortgage were produced by the defendants. Chief-Justice Gummere, in *Maddock* v. *Connelly, 82 N. J. Eq. 609; 90 Atl. Rep. 314,* said (at *p. 315*) : "If he had produced the bond and mortgage from among the papers of the decedent, his possession of them would have been *prima facie* evidence that the mortgage did remain unpaid."

The testimony shows that the bond and mortgage in question were "among the papers" of the mortgagor. One of the most recent decisions on the point under consideration is that of Vice-Chancellor Bigelow in *Pascall* v. *Fidelity Union Trust Company of Newark, 120 N. J. Eq. 462; 185 Atl. Rep. 478.* In that case, the bond and mortgage were in the possession of the mortgagors, which, the vice-chancellor said, is "*prima facie* evidence of payment of the debt, for usually a creditor retains the written obligation until it is satisfied."

From all the evidence in the case, it is my opinion that the complainants' application for relief should be denied, and that there should be a decree in favor of the defendants for a cancellation of the mortgage.